# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fraternal Order of Police Fort Pitt
Lodge No. 1,
                Petitioner         :
                                :
                v.              :    No. 1429 C.D. 2016

City of Pittsburgh,
                Respondent   :

City of Pittsburgh,
                Petitioner     :
                v.              :    No. 1512 C.D. 2016
                               :    Argued:  April 5, 2017

Fraternal Order of Police Fort Pitt
Lodge No. 1,
                Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY
JUDGE COHN JUBELIRER          FILED:     July 17, 2017

In 2003, the City of Pittsburgh (City) was designated a financially distressed city by the Department of Community and Economic Development (DCED) pursuant to the Municipalities Financial Recovery Act[1] (Act 47), and entered into

---

[1] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.712.

Act 47 oversight. As part of the Act 47 process, the City has implemented several Act 47 recovery plans, the most recent a Second Amended Recovery Plan in 2014 (2014 Plan). Relevant here, the 2014 Plan addresses the compensation of the City's employees, including its police officers. The City and the Fraternal Order of Police Fort Pitt Lodge No. 1 (FOP), which represents the City's police officers, are parties to a collective bargaining agreement (CBA) that expired on December 31, 2014. Being unable to reach an agreement on a new CBA, they entered into interest arbitration under the Act Governing Collective Bargaining by Policemen or Firemen[2] (Act 111). An arbitration board (Board) issued an interest arbitration award (Award), from which FOP appeals and the City cross-appeals to this Court.

FOP appealed directly to this Court, asserting that the Award is a deviation from the 2014 Plan because it does not ensure the competitive compensation required by the 2014 Plan. (FOP's Br. at 25 (citing R.R. at 258a-61a).) FOP, therefore, contends that, pursuant to Section 252(e) of Act 47, 53 P.S. § 11701.252(e), this Court can review the Award to determine if the Board's deviation is in accordance with Section 252(b) of Act 47, 53 P.S. § 11701.252(b).[3] The City argues that the Award was consistent with the 2014 Plan and that FOP is really challenging, not the Award, but the 2014 Plan, which does not provide this Court with jurisdiction under Section 252(e). Because the Award complies with the 2014 Plan's allocations, the City argues the Award does not deviate from the

---

[2] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.10.
[3] FOP also asserts the Award violates Section 252 because, although it deviated from the 2014 Plan, the Award did not make all of the findings required by Section 252(b) and (b.1) for it to do so.

2

2014 Plan, and the normal appeals process should be followed. The City has therefore filed a Motion to Quash FOP's Petition for Review.[4]

Typically, the process for challenging an interest arbitration award begins with filing a petition to vacate with the local county court of common pleas (common pleas), with further appeal as necessary. *City of Scranton v. Firefighters Local Union No. 60, of Int'l Ass'n of Fire Fighters*, 29 A.3d 773, 778-79 (Pa. 2011). Here, in addition to the appeals before this Court, both FOP and the City have also filed petitions to vacate the Award, which currently are pending before the Court of Common Pleas of Allegheny County.[5]

However, the Legislature recently amended Section 252 to allow for an Act 111 arbitration board to deviate from an Act 47 plan under certain circumstances and to provide for a direct appeal to this Court of an award doing so. 53 P.S. § 11701.252(b), (b.1), (e). Prior to the amendment, Section 252 provided that "a collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall **not** in any manner violate, expand or diminish its provisions." *Former* 53 P.S. § 11701.252 (emphasis added). In *City of Scranton*, our Supreme Court applied this section where a board of arbitrators issued an Act

---

[4] *See* Rule 1972(a)(7) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1972(a)(7) (authorizing a party to move "[t]o quash for any other reason appearing on the record"). The City also filed a cross-petition for review, asserting that the Award infringes upon its managerial prerogatives, in the event the Court determines that it does have jurisdiction to review the Award. The City offered to withdraw its cross-petition for review with prejudice if its Motion was granted. (City's Memorandum of Law at 30 n.7.)

[5] The petitions are docketed at GD-16-016074. FOP includes in its petition for review to this Court the issues it also raises in its petition to vacate before common pleas, including an argument that "the Award violates Article 3, Section 31 of the Pennsylvania Constitution[, Pa. Const., art. 3, § 31,] by improperly delegating to Act 47 Plan coordinators responsibilities conferred exclusively upon the municipality." (FOP's Petition for Review ¶ 10.) DCED has filed an amicus brief responding to FOP's constitutional challenge to the Award.

111 interest arbitration award, which set compensation rates that exceeded the limits in the municipality's Act 47 plan. The municipality argued that the arbitrators lacked the authority to do so because the award could not "violate, expand or diminish" the provisions of its Act 47 plan. *City of Scranton*, 29 A.3d at 777. After reviewing the statutory language, the Court found that it was unclear whether an Act 111 interest "arbitration award" was an "arbitration settlement" that could not "violate, expand or diminish [an Act 47 plan's] provisions," *former* 53 P.S. § 11701.252(a). *Id.* at 789. Because the "policies underlying Act 111 interest arbitration [were] too strong and engrained in Commonwealth public-sector labor law to be displaced by extrapolation or on account of an ambiguous reference," the Court stated that if the Legislature wanted to displace these policies, it should do so "in explicit terms." *Id.* Accordingly, the Court held that an interest arbitration board could render an award pursuant to Act 111 that exceeded the compensation limits of an Act 47 plan.

The Legislature subsequently amended Section 252,[6] explicitly expressing its intent to allow an Act 111 arbitration board to deviate from an Act 47 plan, but only if the criteria set forth in that section are met. 53 P.S. § 11701.252(b), (b.1). Where there is a deviation from the Act 47 Plan, the Legislature also created a direct appeal to this Court, an exception to the normal appeal process of Act 111 awards. 53 P.S. § 11701.252(e). In its entirety, Section 252 now provides:

> **(a) General rule.**--Except as provided in subsection (b), a collective bargaining agreement or arbitration settlement[7] executed

---

[6] Section 3 of the Act of July 5, 2012, P.L. 1104.

[7] The term "Arbitration settlement" is defined as "An adjustment or settlement of a collective bargaining agreement or dispute. **The term includes a final or binding arbitration award or other determination.**" Section 103 of Act 47, 53 P.S. § 11701.103 (emphasis added).

4

after the adoption of a plan shall not in any manner violate, expand or diminish its provisions.

**(b) Arbitration settlements for policemen and firemen.--**An arbitration settlement rendered under [Act 111], may deviate from the plan, but only if the arbitration settlement:

(1) except as set forth in subsection (b.1), will not cause the distressed municipality to exceed any limits on expenditures for individual collective bargaining units imposed under the plan;

(2) will not further jeopardize the financial stability of the distressed municipality, as measured by the criteria set forth in section 201; and

(3) is not inconsistent with the policy objectives set forth in section 102(a) to relieve the financial distress of the distressed municipality.

**(b.1) Exception.**--Subsection (b)(1) shall not apply to a limit on expenditures for an individual bargaining unit that is determined to be arbitrary, capricious or established in bad faith.

**(c) Hearing before board of arbitration and expert testimony.**--The issue of whether an arbitration settlement deviating from the plan satisfies the criteria under subsection (b) and any exception under subsection (b.1) must be determined by a board of arbitration appointed under [Act 111] and reflected in findings of fact that are supported by substantial evidence and consistent with this section. During the hearing, the testimony of experts in municipal finance, called by the distressed municipality or the collective bargaining organization, is admissible as evidence before the board. An arbitration settlement deviating from the plan must be supported by the credible testimony of an expert in municipal finance that the arbitration settlement satisfies the criteria in subsection (b) and any exception under subsection (b.1). For purposes of this subsection, the term "expert in municipal finance" means an individual holding an advanced degree who has at least eight years of experience in issues relating to municipal finance.

**(d) Review by coordinator.**--An arbitration settlement deviating from the plan under subsection (b) must be provided to the coordinator by the chairman of the board of arbitration within 48

hours of issuance. The coordinator shall review the arbitration settlement to determine whether it violates this section.

     **(e) Appeal.**--The distressed municipality, collective bargaining organization and the coordinator or secretary **have the right to appeal to Commonwealth Court from an arbitration settlement which deviates from the plan under subsection (b).**

     (1) An appeal must be commenced not later than 30 days after issuance of the arbitration settlement.

     (2) The record of the arbitration settlement becomes part of the record on appeal. The court may also supplement the record.

     (3) To the extent an appeal alleges that an arbitration settlement violates this section, the standard of review governing an appeal from an arbitration settlement governed by this section shall be de novo. The court shall not be bound by the factual or legal conclusions of the board of arbitration. Nothing in this subsection shall be construed to otherwise affect the scope or standard of review applicable to certiorari review of arbitration awards.

     (4) The coordinator's decision setting a limit on expenditures for an individual collective bargaining unit under section 241(11) shall not be disturbed on appeal unless the limit is determined to be arbitrary, capricious or established in bad faith.

53 P.S. § 11701.252 (emphasis added).

The Legislature did not alter the normal appeal process for challenging interest arbitrations under Act 111 in its amendment of Section 252. Under its terms, the direct appeal process to this Court in Section 252(e) is available only if an award deviates from the Act 47 Plan. Therefore, for the appeals in this case to be properly before this Court **at this time**, the Award must deviate from the 2014 Plan.

The City's Act 47 recovery coordinators (Coordinators) developed, amended, and assisted the City in implementing the 2014 Plan, which focuses on

6

addressing the City's operational deficit. (Award, Factual Determinations (FD) ¶¶ 19, 37.[8]) The 2014 Plan establishes, in relevant part, maximum compensation allocations for the City's workforce to "better secure Pittsburgh's financial health and sustainability," with the target outcome being "[m]aintaining budget stability and competitive compensation." (R.R. at 258a.) The maximum workforce allocations for the police force are: $82,675,892 in 2015; $84,342,072 in 2016; $86,611,958 in 2017; and $89,990,263 in 2018. (*Id.* at 258a-59a.) Wage increases were authorized at the following rates: "No Across-the-Board Increase" in year one; a one-percent increase in year two; and a two-percent increase in years three, four, five, and beyond. (*Id.* at 260a.) In creating these workforce allocations, the Coordinators considered the costs, both short and long term, of those allocations, but noted that the City's funding needs for its "long-term sustainability left little for workforce allocations." (FD ¶¶ 64-65.)

After considering market factors, such as the City's financial situation, inflation, productivity, workforce size, and "pay and benefit levels in economically and demographically comparable political subdivisions," a majority of the Board concluded "that the workforce allocations contained in the [2014] Plan are not arbitrary, capricious or established in bad faith" and that it would not be "actuarially sound to enhance pension benefits." (*Id.* ¶¶ 68-81, 83.) Accordingly,

---

[8] The Award contains 83 factual determinations, which the Board issued following 10 days of evidentiary hearings, written submissions by the parties, and several executive sessions. The Award makes numerous findings regarding the City's initial fiscal problems, the City's improving fiscal well-being as the recovery process has progressed, the specific actions and investments the City has taken to improve its fiscal position, the required contributions the City must make to its pension plan and other post-employment benefits (OPEB) trust fund, the required levels of funding the City must maintain in various accounts, and how certain events have helped or hindered the City's progress towards fiscal recovery.

7

the Board set forth the terms and conditions of the new CBA, which were not all unanimously agreed upon. Specifically, **the Award** addresses "wage adjustments" for full-time officers and **adopts the no increase in 2015, one-percent increase in 2016, and two-percent increases in 2017 and 2018, as set forth in the 2014 Plan**.[9] (Award ¶ 10.) Other than this change to the wage increase schedule, **the Award did not alter the salary structure that had existed in the prior CBA**. (Award ¶ 17 (stating that "[a]ll other provisions of the Agreement shall remain as is"); Section 6 of the 2010-2014 CBA at 27-30, R.R. at 40a-43a; Agreement between City and FOP amending Section 6(f) (base wage rates) of the 2010-2014 CBA, R.R. at 160a-61a, 166a.)

On its face, the Award does not deviate from the 2014 Plan. To deviate is to "diverge or turn aside . . . [or] stray esp. from a standard, principle, or topic." Webster's Third New International Dictionary 618 (2002). The Award states that it was the Board's intent that the Award "be applied consistent with the terms of Act 47 and the City['s] . . . [2014] Plan." (Award at 10.) Paragraph 10 of the Award **directly adopts the wage increases set forth in that 2014 Plan**. (Award ¶ 10.) And FOP acknowledges that the Board "relied upon the expenditure limits for the FOP contract found in the" 2014 Plan. (FOP's Br. at 23.) In relying upon or adopting these provisions of the 2014 Plan, the Award has not deviated, diverged, or strayed therefrom.

FOP's argument that the Award deviates from the 2014 Plan is based on the following statement contained in the 2014 Plan: "**Target outcome**: **Maintaining** budget stability and **competitive compensation**." (R.R. at 258a (emphasis

_____

[9] The FOP-appointed arbitrator specifically dissented from this paragraph of the Award. (Award at 15.)

8

added).) FOP asserts that the 2014 Plan required the payment of competitive compensation and the Board deviated from this requirement by not increasing the compensation of the police officers in the Award. However, our review of this entire provision reveals that its purpose was to set "the maximum dollars available for each bargaining unit . . . in each year, inclusive of increases and improvements to all components of employee compensation other than pensions and retiree health." (*Id.*) Other than this statement, the provision does not further discuss the **maintenance** of competitive compensation or otherwise require, as FOP argues, the City to increase compensation to ensure such competition. Thus, there was no "competitive compensation" requirement mandating an **increase** in compensation from which the Board turned aside, diverged, or strayed in issuing the Award.[10]

FOP also argues the Board should not have relied upon the workforce allocations **in the 2014 Plan** because those allocations are arbitrary, capricious, or established in bad faith. However, objections to allocations contained in the 2014 Plan are different from a claim that the Award deviated from the 2014 Plan. The majority of the Board used those allocations in rendering the Award, concluding

---

[10] The dissent contends this holding "excises" the words "competitive compensation" "from the [2014] Plan and negates their import[ance]" thereby not giving effect to the Legislature's broadening of Section 252 to allow an interest arbitration award to deviate from an Act 47 plan and a direct appeal to this Court when an award does so. *Fraternal Order of Police Fort Pitt Lodge No. 1 v. City of Pittsburgh*, __ A.3d __, __ (Pa. Cmwlth., Nos. 1429, 1521 C.D. 2016) (Cosgrove, J., dissenting), slip op. at 2-3. We respectfully disagree. Rather, our opinion recognizes that, because the Award **adopts** the wage increases and relies upon the expenditure limits set forth in the 2014 Plan, it cannot be said to have deviated from the 2014 Plan. We also note that, to "maintain" is to "preserve from . . . decline" or to "keep up: CONTINUE." Webster's Third New International Dictionary 1362 (2002). Therefore, the target outcome in the 2014 Plan of "**maintaining** . . . competitive compensation," (R.R. at 258a (emphasis added)), which does not require **increasing** compensation, is consistent with the wage increases set forth in the 2014 Plan, which "preserve from . . . decline" or "keep up" or "CONTINUE," the wages.

9

that the allocations were not arbitrary, capricious, or established in bad faith, and therefore neither made the finding required by Section 252(b.1) to justify deviating from the 2014 Plan nor deviated from the 2014 Plan. 53 P.S. § 11701.252(b.1). FOP's objection is really to the terms of the 2014 Plan, **not** the Award, an objection that does not fall within the narrow category of direct appeals authorized by Section 252(e).

Because there is no deviation between the Award and the 2014 Plan, the direct appeal process in Section 252(e) is not applicable. Rather, the challenges to the Award should follow the normal appeals process to common pleas. Accordingly, the City's Motion to Quash is granted, and the petition for review filed by FOP and the cross-petition for review filed by the City are quashed.[11]

_____
**RENÉE COHN JUBELIRER,** Judge

Judge McCullough did not participate in the decision in these cases.

_____

[11] On May 15, 2017, the City filed an Application for Leave to Withdraw Appeal (Application), asserting the issue raised in its cross-petition had become moot. (Application at 1-2.) Because we lack jurisdiction, we quash the City's cross-petition for review for that reason and will therefore dismiss the Application as moot.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Fraternal Order of Police Fort Pitt     :
Lodge No. 1,     :
           Petitioner     :
    :
         v.     :    No. 1429 C.D. 2016
    :
City of Pittsburgh,     :
           Respondent     :
    :
City of Pittsburgh,     :
           Petitioner     :
    :
         v.     :    No. 1512 C.D. 2016
    :
Fraternal Order of Police Fort Pitt     :
Lodge No. 1,     :
           Respondent     :


## O R D E R


      **NOW**, July 17, 2017, the Motion to Quash Petition for Review filed by the City of Pittsburgh (City) is hereby **GRANTED**, and the petition for review filed by the Fraternal Order of Police Fort Pitt Lodge No. 1 and the cross-petition for review filed by the City are hereby **QUASHED**. The Application for Leave to Withdraw Appeal filed by the City is therefore **DISMISSED AS MOOT**.


                      _____
                      **RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fraternal Order of Police
Fort Pitt Lodge No. 1,      :
            Petitioner      :
     :
       v.      :
     :
City of Pittsburgh,      :     No. 1429 C.D. 2016
           Respondent      :
     :
     :
City of Pittsburgh,      :
           Petitioner      :
     :
       v.      :
     :
Fraternal Order of Police      :
Fort Pitt Lodge No. 1,      :     No. 1512 C.D. 2016
           Respondent      :     Argued: April 5, 2017


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE            FILED: July 17, 2017


         In quashing the appeal of the Fraternal Order of Police Fort Pitt Lodge, No. 1 (Designated Petitioner), the Majority reads into Section 252 of the Municipalities Financial Recovery Act (Act 47)[1] something which the Legislature did not intend. As a result, I am compelled to dissent.

---

[1] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.712.

While restating its intent to protect financially distressed municipalities, the General Assembly twice in the last five years has amended Act 47 to address circumstances such as those present in the case before us. These changes were designed to loosen the contours of the collective bargaining process which were originally imposed on matters arising under Act 47's prior incarnation. Under that scheme, where a municipality was operating pursuant to an Act 47 Plan, a collective bargaining agreement or arbitration resolution executed after adoption of the Plan was essentially set in stone, with no opportunity for alteration. As the Majority recognizes, the revised Section 252 allows for "deviat[ion] from an Act 47 [P]lan under certain circumstances and [ ] provide[s] for a direct appeal to this Court of an award doing so." See Majority, Slip Op. at 3. It appears that the Majority interprets this permission to "deviat[e]" so narrowly as to strangle it of meaning. It is here that the Majority and I differ.

In the present case, and as the Majority recognizes, the Plan at issue specifically made "[m]aintaining … competitive compensation" an issue in determining the compensation to be paid to police officers in the City of Pittsburgh. Majority, Slip Op. at 8-9. According to Designated Petitioner, failure to provide compensation at a competitive rate constitutes a deviation from the Plan, thus entitling it to direct appeal to this Court. This is a simple point which the Majority somehow misses. Instead of allowing an appeal, the Majority looks to the "entire provision" where this statement is found, and summarily determines that "its purpose was to set 'the maximum dollars available for each bargaining unit … in each year, inclusive of increases and improvements to all components of employee compensation other than pensions and retiree health." *Id*. at 9. Finding no "further discuss[ion of] maintenance of competitive compensation" within this

provision, the Majority leaps to the conclusion that "there was no 'competitive compensation' requirement" from which the award at issue strayed. *Id.*

The words "competitive compensation" are rich with meaning in the collective bargaining context. They provide a framework from which to judge an award such as that present and to determine whether it complies with the plan on which it is based. The Majority, however, completely excises these words from the Plan and negates their import to it as if they were never written. This is an astonishing move, one which treats the legislative broadening of the revised Section 252 as if it were a mere draft.

In taking the steps it did with Section 252, the General Assembly recognized the importance of allowing direct appeal to this Court in matters like this. Such an appeal helps to streamline a complicated process and allows for a swift resolution which would otherwise be denied by further litigation at a lower level. The Majority strains its judicial muscle in this case to find otherwise, and in so doing, renders the corrective measures of the Legislature nearly meaningless.

As I would allow this appeal to proceed, I must dissent.

_____
JOSEPH M. COSGROVE, Judge

JMC-3